**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Gary *Miller*, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>Morgan Stanley & Co. Incorporated,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CV 3102 (AKH) |

| | | |
|---|---|---|
| Sharon Shawn *Jamail*, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>Morgan Stanley and Morgan Stanley & Co. Incorporated,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CV 3178 (AKH) |

| | | |
|---|---|---|
| James R. *Bartholomew*, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>Morgan Stanley and Morgan Stanley & Co. Incorporated,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CV 4910 (AKH) |

**DECLARATION OF MICHAEL G. MCLELLAN IN SUPPORT OF JAMES R. BARTHOLOMEW'S RESPONSE TO THE MOTION OF MORGAN STANLEY AND MORGAN STANLEY & CO INCORPORATED FOR CONSOLIDATION**

I, MICHAEL G. MCLELLAN, hereby declare under penalty of perjury the following:

1.    I am associated with the law firm of Finkelstein Thompson LLP, counsel for Plaintiff James R. Bartholomew ("Bartholomew") in *Bartholomew v. Morgan Stanley and Morgan Stanley & Co. Incorporated*, No. 08-cv-4910 (S.D.N.Y.).  I submit this declaration in support of Bartholomew's Response to the Motion of Morgan Stanley and Morgan Stanley & Co Incorporated for Consolidation.

2.    Attached hereto as Exhibit A is the Order and Opinion of District Judge Lawrence M. McKenna, dated July 16, 2008, in the matter of *In re UBS Auction Rate Securities Litigation*, 08-cv-2967.

3.    Attached hereto as Exhibit B is a true and correct copy of the Letter from Daniel C. Girard to the Honorable Alvin K. Hellerstein, dated July 2, 2008.

4.    Attached hereto as Exhibit C is a true and correct copy of a Washington Post new article from April 18, 2008, entitled "*N.Y.'s Attorney General Subpoenas Finance Firms*."

I hereby declare that under the laws of the United States and under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: July 21, 2008                                    __/s/ Michael G. McLellan
                                                      Michael G. McLellan

## <u>CERTIFICATE OF SERVICE</u>

I, Michael G. McLellan, one of the counsel for Plaintiff in the above-referenced action, do hereby certify that on July 21, 2008, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

   /s/ Michael G. McLellan_____
Michael G. McLellan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
In Re UBS AUCTION RATE              :    08 Civ. 2967 (LMM)
SECURITIES LITIGATION               :
                                    :    <u>MEMORANDUM AND ORDER</u>
This Document Relates To:           :
08 Civil 2967, 08 Civil 3082,       :
08 Civil 4352, 08 Civil 2753, and   :
08 Civil 5251.                      :
                                    :
------------------------------------x

McKENNA, D.J.,


## 1.

         The above matter, presently, comprises two putative class

actions brought against the same defendants, under Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.

§§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule

10b-5, alleging fraud in the sale to members of the alleged classes

of auction rate securities.[1]  In very summary form, the gravamen of

the complaints is that the defendant UBS entities misrepresented

auction rate securities as liquid investments, which they were not,

that an appearance of liquidity was given the securities through

the support of the auction rate securities market by the UBS

entities and other broker-dealers, and that, on or about

February 13, 2008, all of the major broker-dealers, including UBS,

---

[1] The two cases are <u>Chandler, et al. v. UBS AG, et al.</u>, 08 Civ.
2967, and <u>Sanchez v. UBS AG, et al.</u>, 08 Civ. 3082, which were
consolidated for all purposes by a stipulation so ordered by the Court
on May 16, 2008.

withdrew their support of the market, rendering some $300 billion of outstanding auction rate securities illiquid.

**2.**

Before the Court are motions (i) to consolidate with the present matter three cases, <u>Bonnist v. UBS AG, et al.</u>, 08 Civ. 4352, <u>Kassover v. UBS AG, et al.</u>, 08 Civ. 2753, and <u>Streit v. UBS AG, et al.</u>, 08 Civ. 5251, (ii) for the appointment of lead plaintiff and lead counsel in all of the cases except <u>Kassover</u> and (iii) for the appointment of interim class counsel in <u>Kassover</u>.

**3.**

"Rule 42 of the Federal Rules of Civil Procedure provides that the Court may consolidate 'actions involving a common question of law or fact.' A determination on the issue of consolidation is left to the sound discretion of the Court." <u>Albert Fadem Trust v. Citigroup Inc.</u>, 239 F.Supp.2d 344, 347 (S.D.N.Y. 2002) (quoting Fed. R. Civ. P. 42(a)) (other citations omitted).

The <u>Bonnist</u> case is premised on substantially the same facts as the present matter and alleges, as do the plaintiffs in the present matter, the violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. It comes within the terms of the stipulation so ordered by this Court on May 16, 2008 (<u>see</u> n.1., <u>supra</u>), and there is no objection to its consolidation with the present matter. The motion for its consolidation with the present matter is granted.

The <u>Kassover</u> complaint, now amended, on the other hand -- while arising out of the same facts as the <u>Chandler</u>, <u>Sanchez</u> and <u>Bonnist</u> complaints, and brought against two of the three UBS entities named as defendants in those cases, and also a putative class action -- does not assert any claims under the Securities Exchange Act or Rule 10b-5, but only a claim under the Investment Advisers Act of 1940 and claims under a state statute and state common law.  As counsel for the <u>Kassover</u> plaintiffs point out, the absence of allegations under the Securities Exchange Act (or the Securities Act of 1933) means that the case is not subject to the requirements and restrictions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including the mandatory stay of discovery during the pendency of any motion to dismiss.  15 U.S.C. § 78u-4(b)(3)(B).[2]

"The trial court has broad discretion to determine whether consolidation is appropriate.  In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation.  However, the discretion to consolidate is not unfettered.  Considerations of convenience and

---

[2] Aric A. and Mary Streit, as Trustees for the Benefit of the Streit Living Trust, who have filed a motion for their appointment as lead counsel herein, have filed a complaint subsequent to the filing of the motion for their appointment as lead counsel.  <u>Streit v. UBS AG</u>, 08 Civ. 5251.  That complaint alleges the violation of the Investment Advisors Act as well as of Sections 10(b) and 20(a) of the Securities Exchange Act.  The Streits seek appointment as interim lead counsel for the Investment Advisors Act claims, as well as appointment as lead counsel in the present matter.  <u>See</u> below.

economy must yield to a paramount concern for a fair and impartial trial." Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (citations omitted). In the present situation, plaintiffs' counsel in Kassover has made a legally respectable choice to proceed only under the Investment Advisors Act in order to avoid the difficulties posed by the PSLRA, one of which is delay.[3]  A limited consolidation of Kassover is granted, however, in the interests of the orderly prosecution of these cases and the limitation of expense. As the cases proceed determinations will be made as to how these goals can be best achieved.

The Streit case, insofar as it alleges claims under the Securities Exchange Act, is also consolidated with the present matter for substantially the same reasons given as to the Bonnist case; insofar as the Streit case alleges claims under the Investment Advisors Act and state law, a limited consolidation, as in the case of Kassover, is granted.

**4.**

The PSLRA governs the appointment of lead plaintiffs in class actions brought under the Securities Exchange Act. 15 U.S.C. § 78u-4(a)(3). It requires that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

---

[3] Counsel for plaintiffs in Kassover have already amended the complaint and initiated discovery, and the case has been referred to a Magistrate Judge for, inter alia, supervision of discovery.

4

representing the interests of class members. . . ." Id. § 78u-4(a)(3)(B)(i). The court, further, "shall adopt a presumption that the most adequate plaintiff in any private action arising under [the Securities Exchange Act] is the person or group of persons that -- (aa) has either filed the complaint or made a motion in response to a notice under [id. § 78u-4(a)(3)(A)(i)]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." Id. § 78u-4(a)(3)(B)(iii)(I). The presumption is rebuttable. Id. § 78u-4(a)(3)(B)(iii)(II).

Five motions seeking appointment as lead counsel in the cases seeking relief under the Securities Exchange Act have been filed.

## (i)

One is by a group consisting of David Chandler, Shelly Chandler, Robert Bee, Edward Taras, Larry S. Watanabe, David Ghiz, and M. Richard Goldberg (all, collectively, the "Chandler Group"), which, collectively, purchased $31,675,083 worth of auction rate securities from UBS during the class period (presumably referring to the period March 21, 2003 through February 13, 2008, the period alleged in the Chandler complaint) and, in light of recent issuer redemptions, now holds approximately $25,675,000 of auction rate

securities.  (Chandler Group Mem., May 19, 2008, at 1; Chandler Group Response, June 9, 2008, at 3.)

### (ii)

A second is by a group consisting of Ricardo Sanchez, Steven Sun, Martha Brixhoff, Paul Brixhoff, Linda Janczyck, Jeanne Walters, Vicki Hall, Marilyn Lesser, Arthur Gales, Steven Divito, Nasir Khalidi, Randy Lederman, Susan Silverman individually and as Trustee for Bessy Einhorn Family Trust, and Charles Silverman, individually and as Trustee for Charles C. Silverman Trust (all, collectively, the "Sanchez Group"), which, collectively, purchased $6,450,000 of auction rate securities from UBS during the class period (presumably referring to the period March 21, 2003 through February 13, 2008, the period alleged in the Sanchez complaint), and, in light of the sale (at a loss) by Mr. Sanchez of auction rate securities holdings of $550,000, now holds $5,900,000 of auction rate securities.  (Sanchez Group Mem., May 20, 2008, at 1 & 9 n.3.)

### (iii)

A third is by a group consisting of Randolph Bonnist and Teachers Count (both, collectively, the "UBS ARS Group"), which, collectively, purchased $1,095,000 or $1,145,000 worth of auction rate securities from UBS during the class period (presumably, the period May 8, 2003 through February 13, 2008, the period alleged in the Bonnist complaint), and, as far as appears, now holds that

amount. (Bonnist Mem., May 20, 2008, at 2; Flannery Decl., May 20, 2008, Ex. B, Bonnist & Teachers Count certifications.)

### (iv)

A fourth is by one class member, Steven Oppenheimer, who purchased from UBS, during the class period March 21, 2003 through February 13, 2008, and still holds, $1,550,000 of auction rate securities. (Glavin Decl., May 20, 2008, Ex. B, Oppenheimer certification).

### (v)

A fifth is by a group consisting of the Streits (see n.2, supra), which purchased $16,850,000 in auction rate securities from UBS during a class period and still hold that amount. (Streit Mem., May 20, 2008, at 1.) The Streits also purchased $3,450,000 of auction rate securities from a broker/dealer other than UBS, which securities are now held by UBS, and have borrowed, to sustain their business, over $10,000,000 from UBS. (Id.)

On the information set forth in the motions, it is evident that either the Chandler Group or the Streits have the largest financial interest in the relief sought, an issue which turns on a resolution of how their respective interests are calculated. Before considering that issue, however, it is necessary to address certain questions as to the interpretation of relevant provisions of the PSLRA.

7

**5.**

The PSLRA itself says that a court is to appoint as lead counsel "the member or members" of the class that the court determines to be most capable of adequately representing the interests of class members, and that that "most adequate plaintiff" is "the person or group of persons" that (in addition to other requirements) has the largest financial interest in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I). The legislative history of the PSLRA has suggested a number of glosses on the statutory language.

The first is the (no doubt correct) perception that the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs.  See In re eSpeed Sec. Litig., 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005).  See also James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter?," 106 Columbia L. Rev. 1587, 1588-89 (November 2006) ("The Congress clearly envisioned that various financial institutions -- pension funds, insurance companies, and mutual funds -- were the most likely types of investors who could combine a large financial stake in the suit's outcome with the sophistication to guide the suit to an appropriate result.")

Here, however, no institutional investor of the sort contemplated has come forward as a candidate for the lead plaintiff job.[4]

Another issue is the propriety of the aggregation of the financial stakes of multiple class members to achieve the required "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

One line of district court cases concludes that such aggregation "defeats the purpose of choosing a lead plaintiff." Goldberger v. FXRE Group, Ltd., 2007 WL 980417, at *4 (S.D.N.Y. Mar. 30, 2007). That position, it has been recently said, "is now the minority view." Reimer v. Ambac Financial Group, Inc., 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (citations omitted). Another line "recognizes that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA." Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citation omitted). This Court, based upon the plain meaning of the unambiguous statutory language, follows this line of cases. Some cases, while allowing

---

[4] The UBS ARS Group includes Teachers Count, a "non-profit organization whose mission is to raise the status of the teaching profession and provide resources to the education community" (Flannery Supplemental Decl., May 30, 2008, Ex. A. at 1), which purchased $25,000 of auction rate securities during the class period. The UBS ARS Group characterizes Teachers Count as "an institutional investor that is precisely the type of lead plaintiff Congress sought to attract to the PSLRA process." (UBS ARS Response, May 30, 2008, at 5.) Even if that is correct -- and it can surely be questioned -- the financial interest of the UBS ARS Group is plainly not large enough to qualify the group as lead plaintiff under the statutory language of the relevant provisions of the PSLRA.

aggregation, have expressed concern over the aggregation of so many class members that the PSLRA's "express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group." Id. (citation omitted).  Groups of six through nine aggregated class members have been found not to be too large.  Barnet v. Elan Corp., PLC, 236 F.R.D. 158, 162 (S.D.N.Y. 2005).

**6.**

As noted above, the Chandler Group (of seven class members) now holds (after deduction of redemptions) approximately $25,675,000 in illiquid auction rate securities.  (Chandler Group Response, June 9, 2008, at 3.)  The Streits contend that they hold $16,850,000 of auction rate securities purchased from defendants (Streit Response, June 9, 2008, at 3), but that there must, for PSLRA purposes, be added to that amount the $10.1 million that they have had to borrow from UBS because of the illiquidity of their auction rate securities, in order to "maintain their real estate business and to self-insure their properties."  (Id. at 3-4). Thus, the Streits argue, their "total financial interest in this litigation exceeds $26,850,000," and "[t]hat amount substantially exceeds the $24,731,583 in face amount of [auction rate securities] that are held by all the Chandler movants after accounting for past

10

redemptions and additional redemptions that have been announced and will shortly be implemented." (Id. at 6 (footnote omitted).)

The $10.1 million borrowed by the Streits should not, logically, be added to the amount of auction rate securities they hold. In the first place, there has been no showing that their particular problem -- the need to borrow the $10.1 million to pursue their real estate business in view of the illiquidity of their auction rate securities -- is, in any way, typical of the alleged class; in the second place, exposure in the case of this consequence of the collapse of the auction rate securities market is not fairly measured by the amount of the funds borrowed but only by the cost of borrowing. In short, the Streits have not shown that they have a larger financial interest in the litigation than the Chandler Group. Arguments based on future redemptions and that such redemptions are more likely to affect the Chandler Group than the Streits are too speculative to take into account. At $24,731,583, the Chandler Group's stake in the litigation is greater than that of the Streits or any other of the movants for lead plaintiff appointment. Accordingly, the Court finds that the Chandler Group is presumed to be the most adequate plaintiff.

**7.**

The presumption that the most adequate plaintiff is the Chandler Group has not been overcome. The Group has shown that they are sufficiently cohesive to consider the issues in, and the

progress of, the case and to communicate with counsel. Further, the Chandler Group "has made a preliminary showing of typicality and adequacy under Rule 23 sufficient to satisfy the requirements of the PSLRA." Albert Fadem Trust, 239 F.Supp.2d at 347. The claims of the numbers of the group are clearly typical of those of the class, and "there is no indication or evidence of conflict of interest between members of the [Chandler Group] and members of the purported class." Id. at 348.

The Chandler Group is appointed as lead plaintiff as to all claims brought under the Securities Exchange Act.

**8.**

Under the PSLRA, the most adequate plaintiff -- here, the Chandler Group -- selects and retains counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Chandler Group's selections -- Girard Gibbs LLP (Lead Counsel), Stueve Siegel Hanson LLP (Co-Lead Counsel) and Seeger Weiss LLP (Liaison Counsel) -- are therefore appointed as counsel for Securities Exchange Act claims.

**8.**

The PSLRA, of course, does not govern the appointment of class counsel in cases brought under the Investment Advisors Act and state law. Counsel in the Kassover case did the initial work on those claims, and it makes sense that they should remain responsible for prosecuting those claims. Those counsel --

Schoengold Sporn Laitman & Lometti -- are appointed as interim class counsel for Investment Advisors Act and state law claims.

**9.**

Copies of this Memorandum and Order are being sent to counsel for defendants and to Seeger Weiss LLP, who are to fax copies forthwith to all counsel on the plaintiffs' side.

SO ORDERED.

Dated:   July **16**, 2008

Lawrence M. McKenna
U.S.D.J.

13



**Schoengold
Sporn
Laitman
& Lometti**

ATTORNEYS AT LAW

Cannon's Walk
19 Fulton Street, Suite 406
New York, New York 10038

Tel: 212.964.0046
Fax: 212.267.8137

www.spornlaw.com

## _FAX TRANSMITTAL SHEET_

**FROM:** Frank R. Schirripa

**RE:** _Bartholomew v. Morgan Stanley., et al.,_
_No. 08-cv-4910 (S.D.N.Y.)_

**DATE:** July 2, 2008

**NO. OF PAGES:** 21

**RECIPIENT(S):**

| Name | Organization | Fax Number |
|------|-------------|-----------|
| Michael G. McLellan | Finklestein Thompson, LLP | 202-337-8090 |
| | | |
| | | |

Message:

_____

_____

_____

_____

_____

_The information contained herein and in any documents accompanying this facsimile transmission are confidential and/or legally privileged materials from the law firm of Schoengold Sporn Laitman & Lometti, P.C. The information is intended only for the addressee or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you. Thank you_

**IF YOU DO NOT RECEIVE <u>ALL</u> PAGES, PLEASE TELEPHONE US IMMEDIATELY AT (212) 964-0046.**

# GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor I San Francisco, CA 94108-2805
Tel: 415.981.4800 I Fax: 415.981.4846 I www.girardgibbs.com

## FACSIMILE COVER PAGE

### JULY 2, 2008

| To: | FIRM OR ORGANIZATION: | FACSIMILE #: |
|---|---|---|
| EDUARD KORSINSKY, ESQ. | LEVI & KORSINSKY, LLP | (212) 363-7171 |
| NORMAN E. SIEGEL, ESQ. | STUEVE SIEGEL HANSON LLP | (816) 714-7101 |
| STEPHEN A. WEISS, ESQ. | SEEGER WEISS LLP | (212) 584-0799 |
| SAMUEL P. SPORN, ESQ. | SCHOENGOLD SPORN LAITMAN & LOMETTI, P.C. | (212) 267-8137 |
| RONIT SETTON, ESQ. | CADWALADER | (212) 504-6666 |

FROM: AARON M. SHEANIN

RE: GARY MILLER V. MORGAN STANLEY & CO., INC., ET AL.
SHARON SHAWN JAMAIL V. MORGAN STANLEY, ET AL.
JAMES R. BARTHOLOMEW V. MORGAN STANLEY, ET AL.

CASE CODE: ARS:MS

NUMBER OF PAGES: 20
(INCLUDING COVER SHEET)

The information contained in this facsimile message is attorney-client privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. postal service.

# GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor | San Francisco, CA 94108-2819
Tel: 415.981.4800 | Fax: 415.981.4846 | www.girardgibbs.com

July 2, 2008

**VIA HAND DELIVERY**

The Honorable Alvin K. Hellerstein
United States Courthouse
500 Pearl St., Room 1050
New York, NY 10007

> Re: *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
> *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
> *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)

Dear Judge Hellerstein:

We represent class members Donald Smith and Sam Solovey (collectively, the "Smith Group"), who have moved to consolidate the *Miller* and *Jamail* actions referenced above, and for appointment of Lead Plaintiff and Lead Counsel. We write in response to the Court's endorsed order of June 25, 2008 directing counsel for plaintiffs to advise the Court whether the motions for consolidation and appointment of Lead Plaintiff should be withdrawn in light of the motion before the Judicial Panel on Multidistrict Litigation to transfer all the ARS actions to a single court for coordinated pre-trial proceedings (*In re Auction Rate Securities (ARS) Marketing Litigation*, MDL No. 1979). The Smith Group agrees that the Court should stay proceedings pending a determination by the MDL Panel, but we respectfully submit that before doing so, the Court should first consolidate the three cases listed above (including the later-filed *Bartholomew* case) and rule on the fully-briefed motions for appointment of Lead Plaintiff, as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B).

These cases all arise out of Morgan Stanley's sales of auction rate securities. There are approximately 30 similar auction rate securities cases against various brokerage firms (*e.g.*, UBS, Bank of America, Wachovia, Wells Fargo, etc.) pending in courts around the country. The cases all allege that the brokerage firms sold auction rate securities as readily liquid, cash equivalent investments. The securities are now unsaleable following the collapse of the auction rate securities market in February 2008.

The *Miller* and *Jamail* cases pending in this Court allege claims against Morgan Stanley under the Securities Exchange Act of 1934. Under the PSLRA, these actions should be consolidated and Lead Plaintiffs and Lead Counsel appointed, notwithstanding the pendency of MDL proceedings. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (requiring the Court to consider motions for appointment and appoint a Lead Plaintiff within 90 days of publication of the notice of pendency of an action under the PSLRA). Motions for consolidation of *Miller* and *Jamail* and for appointment of Lead Plaintiff were filed on May 27, 2008, within the time period set forth in the PSLRA. The briefing shows that the Smith Group has the largest financial interest and satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23. Therefore, we respectfully submit that the Smith Group should be appointed as Lead Plaintiff, and its selection of counsel should be approved.

To:  The Honorable Alvin K. Hellerstein
Re:  *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
     *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
     *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)
July 2, 2008
Page 2.


On May 28, 2008—one day after the Lead Plaintiff motions were due—an additional class action entitled *Bartholomew v. Morgan Stanley, et al.*, 08-cv-4910 (AKH) (S.D.N.Y.), was filed in this Court. That case, which arises out of the same conduct as the Exchange Act cases, attempts to avoid the PSLRA by pleading claims under the Investment Advisors Act ("IAA") and state law only.

Although *Bartholomew* is not presently the subject of a motion to consolidate, it should be consolidated with the Exchange Act cases because all of the cases involve common questions of law and fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The three cases: (1) allege that Morgan Stanley made material misrepresentations and omissions regarding auction rate securities and manipulated the auction market; (2) name overlapping defendants; and (3) are at a preliminary stage. Defendants have not filed an answer and no discovery has occurred in any case. That *Bartholomew* asserts claims under the IAA and state law, rather than the Exchange Act, does not preclude consolidation. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). Consolidation of all three actions would serve judicial economy.

Faced with similar circumstances, the Hon. Laura T. Swain recently consolidated the auction rate securities class actions against Citigroup including four Exchange Act cases and one IAA case. The court explained that it "does not find persuasive the [IAA] Plaintiffs' argument that they will be prejudiced by consolidation and finds, rather, that the other parties may be prejudiced by a failure to consolidate." *LHB Insurance Brokerage Inc. v. Citigroup Inc., et al.*, 08-cv-3095 (LTS) (S.D.N.Y. June 25, 2008) (submitted herewith). Judge Swain appointed a lead plaintiff in the PSLRA cases, approved his selection of counsel, and appointed the same counsel as interim class counsel for the non-PSLRA claims. *See id.* at 7.

We respectfully submit that, as in the Citigroup cases, this Court should consolidate all of the above-captioned actions, appoint the Smith Group as Lead Plaintiff in the PSLRA actions, and approve its selection of counsel in the PSLRA cases and as interim class counsel for the non-PSLRA claims. Upon entry of orders consolidating the Morgan Stanley actions and appointing lead plaintiffs and counsel, the Court should stay further proceedings pending a decision by the JPML.


Respectfully submitted,

GIRARD GIBBS LLP

Daniel C. Girard


Enclosure

To:    The Honorable Alvin K. Hellerstein
Re:    *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
       *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
       *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)
July 2, 2008
Page 3.


cc:    Eduard Korsinsky, Esq. (counsel for plaintiff in *Miller*)
       Norman E. Siegel, Esq. (counsel for the Smith Group)
       Stephen A. Weiss, Esq. (counsel for the Smith Group)
       Samuel P. Sporn, Esq. (counsel for plaintiff in *Bartholomew*)
       Ronit Setton, Esq. (counsel for Defendants)
       *All counsel served via facsimile*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

LHB INSURANCE BROKERAGE INC., individually
and on behalf of all others similarly situated,

              Plaintiffs,

      -v-

CITIGROUP INC. and CITIGROUP
GLOBAL MARKETS, INC.,

            Defendants.
------------------------------------------------------x

LISA SWANSON, individually and on behalf
of all others similarly situated,

              Plaintiffs,

      -v-

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

            Defendants.
------------------------------------------------------x

SAMUEL A. STOCKHAMER and ALICE L.
STOCKHAMER, on behalf of themselves and
on all others similarly situated,

              Plaintiffs,

      -v-

CITIGROUP INC., and CITIGROUP GLOBAL
CAPITAL MARKETS, INC.,

            Defendants.
------------------------------------------------------x

No. 08 Civ. 3095(LTS) (FM)

No. 08 Civ. 3139 (LTS) (AJP)

No. 08 Civ. 3904 (LTS) (KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   JUN 2 5 2008

CONORDER.WPD        VERSION 6/25/08

1

WEDGEWOOD TACOMA LLC, individually and
on behalf of all others similarly situated,

Plaintiffs,

-v-                                                No. 08 Civ. 4360 (LTS) (FM)

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

Defendants.
------------------------------------------------------x

SAED GHALAYINI, individually and
on behalf of all others similarly situated,

Plaintiffs,

-v-                                                No. 08 Civ. 5016

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

Defendants.
------------------------------------------------------x

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD PLAINTIFF'S COUNSEL

Before the Court are related securities fraud class actions alleging that some or all

of Defendants Citigroup Inc., Citigroup Global Markets, Inc. and Citi Smith Barney (collectively,

"Defendants"), failed to disclose material facts while marketing auction rate securities ("ARS")

and that, once Defendants ceased their artificial support for the ARS auction market, the market

collapsed and Plaintiffs were left with illiquid ARS. Plaintiff Wedgewood Tacoma, LLC,

together with movant Jemstone, LLC (collectively referred to as "Wedgewood"), moved the

Court to consolidate the above-captioned putative class actions and for an order appointing them

lead plaintiffs and their counsel lead counsel. Movants David Dignam and Ted Link

(collectively "the Dignam Group") also moved the Court to consolidate the above-captioned

putative class actions and appoint the Dignam Group lead plaintiff and its counsel lead counsel.

Movant Dr. Michael A. Passidomo ("Dr. Passidomo") moved the Court to consolidate the above-

captioned putative class actions and for an order appointing him lead plaintiff and his counsel

lead counsel. Plaintiff LHB Insurance Group ("LHB"), moved the Court for an order appointing

it lead plaintiff. The Court construed each motion to relate to the above-captioned actions and

any class actions relating to the same subject matter as the above-captioned actions hereafter filed

in or transferred to this Court.

On June 11, 2008, the Court issued an order setting a briefing schedule and

scheduling a hearing on the applications for June 24, 2008. The Court received a memorandum

of law in opposition to the consolidation of the Stockhamer action, 08 Civ. 3904, from the

plaintiffs in that action ("Stockhamer Plaintiffs"), and a response to the Stockhamer Plaintiffs'

opposition from the Defendants. The Court received a memorandum of law and a reply

memorandum in further support of Dr. Passidomo's motion and in opposition to competing lead

plaintiff designation motions. The Court also received a memorandum of law and a reply

memorandum in further support of Wedgewood's motion and in opposition to competing motion.

In these latest papers, Wedgewood augmented its application with a request that its counsel be

designated interim class counsel with respect to non-PSLRA claims in the event the cases were

consolidated and Wedgewood selected as lead plaintiff. The Dignam Group filed a statement of

no opposition to Dr. Passidomo's motion and subsequently filed a supplement, indicating that it

took no position on the challenges to Dr. Passidomo's or Wedgewood's adequacy as a lead

plaintiff, but indicated that it was still willing to serve as lead plaintiff, if the Court desired. LHB
filed no additional papers.

On June 24, 2008, the Court held a hearing on the motions. Counsel appeared on
behalf of LHB, on behalf of the Dignam Group, on behalf of the Stockhamer Plaintiffs, on behalf
of Wedgewood, on behalf of Dr. Passidomo and on behalf of the Defendants. The Court has
considered thoroughly all submissions and argument related to these motions and the decision to
be rendered reflects such consideration. For the following reasons, and for the reasons stated on
the record of the hearing, the Court grants the motions to consolidate and Dr. Passidomo's
motion for appointment as lead plaintiff and approves Dr. Passidomo's selection of Zwerling,
Schachter & Zwerling LLP as lead counsel. The oral application of the Stockhamer Plaintiffs
and their counsel to be appointed as lead or co-lead plaintiffs and counsel with respect to the
non-PSLRA claims is denied.

Motion to Consolidate

Rule 42 of the Federal Rules of Civil Procedure provides that the Court may
consolidate "actions involving a common question of law or fact." Fed. R. Civ. P. 42(a). A
determination on the issue of consolidation is left to the sound discretion of the Court. Johnson
v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990); Zicklin v. Breuer, 534 F. Supp. 745
(S.D.N.Y. 1982).

The Court finds that all of the above-captioned the actions present common
factual and legal issues, involve overlapping defendants and will involve similar subject matter
and similar issues related to class certification. The Court does not find persuasive the
Stockhamer Plaintiffs' argument that they will be prejudiced by consolidation and finds, rather,

that the other parties may be prejudiced by a failure to consolidate. Accordingly, the Court grants the motions for consolidation in the interests of judicial economy.

Motion for Appointment as Lead Plaintiff

The PSLRA provides in relevant part that "the court shall . . . appoint as lead plaintiff the member or members of the purported class that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In making its determination on a motion for appointment of a lead plaintiff, the Court is also required to adopt the rebuttable presumption that the "most adequate plaintiff" is

> the person or group of persons that– (aa) has either filed the complaint or made a motion in response to [the initial class] notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof by a member of the purported class "that the presumptively most adequate plaintiff–(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses which render such plaintiff incapable of adequately representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(II).

The Court finds that Dr. Passidomo is the presumptively most adequate plaintiff under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) based on his undisputed financial interest and his preliminary showing that he meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. See Fed. R. Civ. P. 23; see also In re Oxford Health Plans, 182 F.R.D. 42,

ConOrder.Wpd                    Version 6/25/08

49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The claims of Dr. Passidomo are typical of the class because his claims and injuries arise from the same course of conduct as that from which claims of the other class members arise. The adequacy of representation component of Rule 23 is also satisfied, as there is no conflict of interest between Dr. Passidomo and members of the purported class, he has obtained qualified and experienced counsel, and has a significant interest in the outcome of the litigation so as to ensure vigorous prosecution of the case. Cf. Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). The Court's preliminary determination of typicality and adequacy, will not, however, preclude any party from contesting class certification on such bases in the future.

The Court finds that the issues that Wedgewood raised in an attempt to rebut the presumption that Dr. Passidomo is the presumptive most adequate plaintiff are insufficient to raise any substantial issue as to Dr. Passidomo's adequacy or integrity, or as to whether he is subject to unique defenses, so that the presumption remains unrebutted.

The Court hereby grants Dr. Passidomo's motion for appointment as lead plaintiff, as to all causes of action asserted in the consolidated cases. The lead plaintiff designation motions of LHB, the Dignam Group and Wedgewood are denied.

Appointment of Lead Counsel

Subject to the Court's approval, the most adequate plaintiff shall select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Dr. Passidomo seeks approval of his selection of Zwerling, Schacter & Zwerling LLP as lead counsel. Upon review of the papers submitted in support of Dr. Passidomo's motion and consideration of further representations

made on the record, the Court finds that Zwerling, Schacter & Zwerling LLP has had substantial experience and success in prosecuting securities class actions, rendering it capable of serving as lead counsel in this action. (Speirs Aff., Ex. D.)

The Court further finds that Dr. Passidomo's approximately $10,950,000 stake in this action provides the type of incentive for close supervision of counsel that the PSLRA contemplates. Accordingly, Dr. Passidomo's selection of Zwerling, Schacter & Zwerling LLP as lead counsel is approved.

Interim Class Counsel

Federal Rule of Civil Procedure 23(g)(3) provides that the Court may appoint interim class counsel prior to the certification of a class. With respect to the non-PSLRA claims, the Court finds, based on the papers submitted in support of Dr. Passidomo's motion and the further representations made during the hearing regarding the firm's willingness and ability to assume the interim class counsel position, that Zwerling, Schacter & Zwerling LLP has the necessary experience to render it a capable interim class counsel with respect to the consolidated, non-PSLRA claims. The Court further finds that appointment of co-counsel with regard to the non-PSLRA actions is unnecessary at this time, and might, in fact, be detrimental to effective prosecution of the proceedings.

It is, therefore, ORDERED that:

A. LEAD PLAINTIFF AND LEAD COUNSEL

1. Dr. Michael A. Passidomo is appointed Lead Plaintiff.

2. Zwerling, Schachter & Zwerling LLP shall serve as Lead Counsel for all plaintiffs in the

Consolidated Actions. Zwerling, Schachter & Zwerling LLP shall also serve as interim class counsel with regard to the non-PSLRA claims in the Consolidated Actions.

Lead/Interim Counsel shall have the following responsibilities:

a. Sign any consolidated complaint, motions, briefs, discovery requests, objections, or notices on behalf of all plaintiffs or those plaintiffs filing the particular papers.

b. Conduct all pretrial proceedings on behalf of plaintiffs.

c. Brief and argue motions.

d. Initiate and conduct discovery.

e. Speak on behalf of plaintiffs at any pretrial conference.

f. Employ and consult with experts.

g. Conduct settlement negotiations with defense counsel on behalf of plaintiffs.

h. Call meetings of plaintiffs' counsel.

i. Distribute to all plaintiffs' counsel copies of all notices, orders, and decisions of the Court to the extent counsel have not registered on the ECF system for this case; maintain an up-to-date list of counsel available to all plaintiffs' counsel on request; and keep a complete file of all papers and discovery materials filed or generated in the Consolidated Actions, which shall be available to all plaintiffs' counsel at reasonable hours.

3. All other applications for appointment as lead (or co-lead) Plaintiff or counsel are denied.

## B. CONSOLIDATION

1. The motions for consolidation are granted and the above-captioned actions are hereby consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a). The consolidated cases do not include Finn v. Smith Barney, et al., 08 Civ. 2975. The consolidated securities cases shall be referred to collectively as In re Citigroup Auction Rate Securities Litigation, Master File No. 08 Civ. 3095 (LTS)(FM).

2. No action taken hereunder shall have the effect of making any person, firm or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## C. MASTER DOCKET AND SEPARATE ACTION DOCKETS

1. A Master Docket is hereby established for the consolidated proceedings in the actions consolidated herein and any other actions subsequently consolidated with them either for all purposes or for pretrial purposes (the "Consolidated Actions"). Entries in said Master Docket shall be applicable to the Consolidated Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

2.    (a) When a pleading is filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the parties shall electronically or manually file such pleading pursuant to this Court's Guidelines and Amended Instructions for Electronic Case Filing.

   (b) When a pleading is electronically filed and the caption, pursuant to this Order,

shows that it is applicable to "All Actions," the parties shall electronically file such pleading in the Master File only. Docket entries shall not be made to each separate action.

(c) When a pleading is manually filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the parties shall submit to this Court the original pleading for the Master File. No copies shall be submitted for each separate action. Upon receiving the original pleading, the Clerk shall docket the pleading to the Master File only. Docket entries shall not be made to each separate action.

## D. MASTER FILE AND SEPARATE ACTION FILES

1. A Master File is hereby established for the consolidated proceedings in the Consolidated Actions. The Master File shall be 08 Civ. 3095. The original of this Order shall be docketed by the Clerk of Court in the Master File herein established.

2. The Clerk shall maintain a separate file for each of the Consolidated Actions, and filings shall be made therein in accordance with the regular procedures of the Clerk of this Court except as modified by Section B of this Order. The Clerk shall docket a copy of this Order in each such separate file. Once the Clerk has docketed this Order, counsel of record in each of the Consolidated Actions will receive a Notice of Electronic Filing.

## E. NEWLY FILED OR TRANSFERRED ACTIONS

1. When a class action that relates to the same subject matter as the Consolidated Actions is hereafter filed in or transferred to this Court and assigned to the undersigned, it shall be

consolidated with these actions in the same manner as the cases identified in Section A above (provided that any case transferred to this Court solely for pretrial proceedings shall be consolidated only to that extent absent further order of this Court), except as provided below, and the Clerk of Court shall:

    (a)    Docket a copy of this Order in the file for newly filed or transferred actions.

    (b)    Make an appropriate entry in the Master Docket.

2. The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case which might properly be consolidated with these actions.

## F. APPLICATION OF THIS ORDER TO SUBSEQUENT CASES

1. This Order shall apply to each class action assigned to the undersigned alleging claims similar to those set forth in these actions against Citigroup Inc., and/or its subsidiaries. This Order shall apply to each such case which is subsequently filed in or transferred to this Court and which is assigned to the undersigned, unless a party objecting to the consolidation of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk notifies counsel for that party of this Order. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

2. Unless a plaintiff in a subsequently filed or transferred case is permitted by the Court to use a separate complaint, defendants shall not be required to answer, plead or otherwise move with respect to that complaint in any such case. If a plaintiff in any such case is permitted to use a separate complaint, each defendant shall have thirty days from the date the Court grants such

CONORDER.WPD       VERSION 6/25/08

11

permission within which to answer, plead or otherwise move with respect to any such complaint.

## G. CAPTIONS

1. Every pleading filed in the Consolidated Action, and in any separate action included therein, shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————— x
IN RE CITIGROUP AUCTION     :
RATE SECURITIES LITIGATION  :
                            :      MASTER FILE
                            :      08 Civ. 83095 (LTS)(FM)
                            :
This Document Relates To:   :
                            :
                            :
                            :
                            :
———————————————————— x

2. When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption. When a pleading is intended to apply to fewer than all of such actions, the docket number for each individual action to which it is intended to apply and the name of the plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption.

## H. FILING AND DOCKETING

1. When a paper is filed and the caption shows that it is applicable to "All Actions," the parties shall electronically or manually file such paper pursuant to this Court's Electronic Case Filing Rules and Instructions.

2.    (a)  When a paper is electronically filed and the caption shows that it is applicable to "All Actions," the parties shall electronically file such paper in the Master File only.  No docket entries shall be made to each separate action.

(b)  When a paper is manually filed and the caption shows that it is applicable to "All Actions," the parties shall submit to this Court the original paper for the Master File.  Copies shall not be submitted for each separate action.  Upon receiving the original paper, the Clerk shall docket the paper to the Master File only.  Docket entries shall not be made to each separate action.

3.    (a)  When a paper is filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall electronically or manually file such paper pursuant to this Court's Guidelines and Amended Instructions for Electronic Case Filing.

(b)  When a paper is electronically filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall electronically file such paper in the Master File and electronically file such paper to each separate action to which it applies.

(c)  When a paper is manually filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall submit to this Court the original paper for the Master File and copies of such paper for each separate action to which it applies.  Upon receiving the papers, the Clerk shall docket the original paper to the Master File and docket copies of such paper to each separate action to which it applies.

## I. SCHEDULE

1. The Lead Plaintiff, shall file and serve a Consolidated Amended Complaint for the Consolidated Actions and any actions subsequently consolidated with them, within sixty (60) days of the date of this Order.

2. Pending filing and service of the Consolidated Amended Complaint, defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them, or to any discovery requests previously served in any of the consolidated actions.

3. Defendants shall answer or otherwise respond to the Consolidated Amended Complaint within of sixty (60) days after service thereof.

4. If Defendants move to dismiss the Consolidated Amended Complaint, opposition papers shall be served and filed within forty-five (45) days after the filing and service of such motion, and any reply papers shall be served and filed within thirty (30) days after the filing and service of plaintiffs' opposition papers.

5. Further proceedings in these consolidated actions will be conducted in compliance with the provisions of the Initial Conference Order dated April 21, 2008, and issued in 08 Civ. 3139 (Swanson) dated April 21, 2008, and in accordance with applicable orders, federal and local court procedural rules and Individual Practices Rules of the undersigned, including Rule 2.B. thereof.

This Order resolves docket entries nos. 7, 10, 13 and 16 in case no. 08 Civ. 3095; docket

entry no. 9 in case no. 08 Civ. 3139; docket entry no. 5 in case no. 08 Civ. 3904; and docket

entry no. 5 in case no. 08 Civ. 4360.

SO ORDERED.

Dated: New York, New York
        June 25, 2008

LAURA TAYLOR SWAIN
United States District Judge

washingtonpost.com

# N.Y.'s Attorney General Subpoenas Finance Firms

By Tomoeh Murakami Tse
Washington Post Staff Writer
Friday, April 18, 2008; D03

Advertisement



Making home possible.

Freddie Mac

NEW YORK, April 17 -- New York Attorney General Andrew M. Cuomo has launched a wide-ranging criminal investigation of the market for auction rate securities, issuing subpoenas to 18 financial services companies, a source familiar with the inquiry said Thursday.

Auction rate securities are a troubled corner of the credit market that has left investors unable to access their money and local governments with higher financing costs.

Cuomo's office has requested documents from firms including Goldman Sachs, Morgan Stanley, J.P. Morgan, Merrill Lynch and UBS, said the source, who spoke on the condition of anonymity because the investigation is in its early stages.

Investigators are looking at various aspects of the $330 billion industry, including how the securities were marketed to the municipalities, hospitals and schools that issue them and whether investors were adequately informed of the risks.

In recent years, investment banks have made handsome fees underwriting and selling auction rate securities.

The securities had been considered a higher-yielding alternative to cash investments. Interest rates on these instruments are set at auctions that are held as frequently as every seven days.

However, when demand for the securities dried up in February, resulting in a failed auction, many of the interest rates reset at much higher levels. Investors who had bought the securities were then left unable to sell their holdings, which many thought were safe cashlike investments.

J.P. Morgan, Goldman Sachs, Merrill Lynch and UBS all declined to comment. A Morgan Stanley representative did not return calls seeking comment Thursday evening.

View all comments that have been posted about this article.

---

**Post a Comment**

**View all comments** that have been posted about this article.